UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BARBARA WOODS, ET AL.                    CIVIL ACTION

v.                                       NO. 11-1146

ELWYN BOCZ, ET AL.                       SECTION "F"

ORDER AND REASONS

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss the plaintiff's amended complaint.  Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the noticed submission date.  No memoranda in opposition to the defendants' Rule 12(b)(6) motion, which was due not later than September 13, 2011, has been submitted.[1]  For the reasons that follow, the defendants' motion to dismiss is GRANTED.

**Background**

This is a voting rights case in which the plaintiffs challenge the constitutionality of the redistricting plan adopted by St. James Parish on May 9, 2011 after a veto by the Parish President. Four days later, a group of plaintiffs (all St. James Parish residents), as representatives of a putative class, sued the St.

---

[1] This is the second time that counsel for plaintiffs has failed to timely file opposition papers in response to the defendants' motion to dismiss.  The first time it happened, upon a finding by this Court that the defendants' motion to dismiss had merit, the Court granted the motion as unopposed.

1

James Parish Council and its members in this Court, seeking a declaratory judgment that the redistricting plan is unconstitutional; the plaintiffs contended in their original complaint that the reapportionment plan "is very irregular and obviously contains districts that have been gerrymandered for partisan or personal political purposes."

On June 7, 2011 the defendants filed a motion to dismiss the complaint; the motion was noticed for hearing on June 22, making the plaintiffs' opposition due no later than June 14, 2011. The plaintiffs did not file an opposition, or otherwise request an extension of time within which to do so; nor did they request a continuance of the submission date. Having received no response from the plaintiffs, on June 17 the Court granted the defendants' motion to dismiss. In doing so, the Court noted that the motion was unopposed and further found that "the motion has merit". Four days later, judgment was entered in favor of the defendants. The day after judgment was entered, the plaintiffs sought reconsideration, and also requested permission to file their opposition papers to the defendants' motion to dismiss.[2] In light of the fact that an amended redistricting plan was passed in the

---

[2]The motion for reconsideration was filed the day after judgment was entered and the motion for leave to file their opposition was filed six weeks later.

meantime,[3] the plaintiffs also filed a motion for leave to amend their complaint on August 9, 2011, which was contested and set for hearing before the Magistrate Judge.

On August 23, 2011 the Court granted the plaintiffs' motion for reconsideration and denied without prejudice their motion for leave to file response to the defendants' Rule 12(b)(6) motion.  In so doing, the Court noted:

> Counsel for plaintiff says that he was out of the country on a family vacation from June 5, 2011 through June 12, 2011.  He suggests that this made it impossible for him to respond within the time limit required by the Local Rules.[]  The Court disagrees because counsel could have, and should have, requested a continuance of the submission date on the defendants' motion.  Counsel's inadvertence and neglect is simply not grounds for reconsideration.  However, the Court is mindful that the individual plaintiffs are not at fault for their counsel's mistakes.[]  Accordingly, the Court will permit them to file their opposition papers [to any re-filed motion to dismiss, pending the magistrate judge's ruling on the plaintiffs' motion to amend their complaint].

See Order and Reasons dated August 23, 2011.  Although acknowledging that the individual plaintiffs were not at fault for their counsel's mistakes, the Court expressly admonished counsel

---

[3]While the plaintiffs' motion for reconsideration was pending, the redistricting plan challenged by the original complaint was changed by the St. James Parish Council.  On June 29, 2011 a different plan was adopted after the Parish Council rescinded its earlier adoption of Ordinance 11-04, which approved redistricting Alternative 3A.  Amended Ordinance 11-04 was adopted to enact a revised redistricting Alternative 3B.  St. James submitted Alternative 3B to the U.S. Justice Department under the Voting Rights Act for Section 5 preclearance, which is pending.  Based on these new developments, the defendants contended that the original complaint was no longer valid.

that: "Future lapses by counsel...will not be tolerated. <u>See</u> 28 U.S.C. § 1927, for example." <u>Id.</u> In denying without prejudice the plaintiffs' request to submit their untimely opposition papers, pending new dismissal papers to be filed by the defendants because of the new redistricting plan, the Court further warned: "...the plaintiffs will have an opportunity, strictly adhering to the briefing schedule mandated by this Court's Local Rules, to present their arguments in opposition to a motion to dismiss filed by the defendants." <u>Id.</u> The defendants now seek to dismiss the plaintiffs' amended complaint. The plaintiffs have, still again, failed to submit any opposition memoranda. In failing to submit timely opposition papers in response to the defendants' present motion to dismiss, the plaintiffs have for a second time wholly disregarded this Court's Local Rules and its August 23 Order and Reasons.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. <u>See Lowrey v. Tex. A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).  Indeed, the Court must first identify pleadings that are conclusory and, thus, not entitled to the assumption of truth. Iqbal, 129 S. Ct. at 1949. A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S. Ct. at 1949 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550 U.S. at 557) (internal quotations omitted).

                                II.

The Voting Rights Act provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.
>     (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

The defendants urge the Court to dismiss the plaintiffs' amended complaint for failure to state a claim. They suggest that, after the formulaic and conclusory recitations are eliminated from consideration, as called for by Iqbal, 129 S. Ct. at 1949-51, the few remaining facts do not state a claim upon which relief may be granted. In particular, the defendants contend that the amended complaint is devoid of any specific facts underlying the plaintiffs' asserted claims; the defendants submit that the amended complaint does not provide information stating essentials such as how the Parish's redistricting plan violates the one person, one vote principle; how the plan discriminates against minority groups; how the redistricting plan is irregular or "gerrymandered"; or how the plan dilutes the plaintiffs' votes. The Court considers each of the defendants' arguments in turn.

A.

The defendants first contend that the plaintiffs' allegation that Plan 3B violates the one person, one vote principle because it "exhibits deviation by cramming and lack of compactness" fails to state a claim. The Court agrees.

While the Parish is required to make a "good faith effort to construct districts...as nearly of equal proportion as is practicable", Reynolds v. Sims, 377 U.S. 533, 568 (1964), "minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of

invidious discrimination under the Fourteenth Amendment." <u>Gaffney v. Cummings</u>, 412 U.S. 735, 745 (1973). Apportionment plans with a maximum deviation under 10% fall within the category of minor deviations. <u>Fairley v. Hattiesburg, Miss.</u>, 584 F.3d 660, 675 (5th Cir. 2009)(citation omitted)("If a population deviance is less than 10%, it is considered minor and does not suffice, alone, to make out a prima facie case of discrimination."). The 10% threshold is the boundary between a plan that is constitutional on its face and one that is not; and even the plaintiffs concede in their amended complaint that "...the deviation of 9.2% is technically within the 10% range of accepted deviation." Accordingly, the plaintiff must allege facts that, if true, would "prove that the redistricting process was tainted by arbitrariness or discrimination." <u>Fairley</u>, 584 F.3d at 675. The amended complaint, however, offers only conclusory labels such as "cramming", "gerrymandering", and lack of "compactness." They fall short. Accepting the plaintiffs' deviation allegation as true, the plaintiffs fail to state a claim that Plan 3B violates one person, one vote principles; rather they describe a redistricting plan that is prima facie constitutional.[4]

B.

The defendants next challenge the sufficiency of the

---

[4] This is so even though, as defendants point out, the deviation is actually 9.91%, which is still below the 10% threshold. <u>See</u> <u>White v. Regester</u>, 412 U.S. 755 (1973)(9.9% deviation failed to establish Equal Protection violation).

plaintiffs' allegation that the defendants failed to consider the Voting Rights Act in drafting the plan. The defendants point out that the Voting Rights Act does not mandate a specific consideration of race but, rather, forbids a "denial or abridgment" of the right to vote on account of race. The plaintiffs fail to allege circumstances that suggest that the effect of the plan denies or abridges the right to vote on account of race.

C.

The defendants next challenge the sufficiency of the plaintiffs' allegations that "despite the fact that the African-American population increased in all districts except District 4, since the 2000 census, only three districts could be considered minority 'districts of opportunity' where a minority could elect a candidate of choice" and "Plan 3B is regressive in that it will reduce African American representation on the Parish Council by allowing only three majority African American districts out of seven despite the fact that according to the latest census data, the population of St. James Parish is fifty-two percent African American." To the extent the plaintiffs suggest that Plan 3B is actionable because it has not increased the opportunity to elect minority candidates commensurate with minority population growth, the defendants insist that no actionable claim is stated. The Court agrees. Section 2 of the Voting Rights Act expressly rejects any such claim when it provides: "...nothing in this section

9

establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 42 U.S.C. § 1973(b).

D.

The defendants next address the plaintiffs' allegation that "the same number of people were not placed in each district so that each person's vote counts the same. Specifically, in Districts 3, 5, 6, and 7, Alternative Plan 3B skews the ration of Black to White voters to such a degree, that the minority voters in each of those districts, be they black or white, will have no voice.... This violates the Voting Rights Act of 1965 in that it has the effect of diluting the minority vote." The defendants contend that the plaintiffs seem to imply, in a conclusory fashion, that the plan violates the one person, one vote principle. The defendants insist that the plaintiffs' conclusory allegations fall short of alleging factual matter sufficient to state a facially plausible dilution claim because they have failed to allege the districts involved, how many people are impacted, and what race they are. The Court agrees. Generalized criticisms of the plan such as one encounters here fail to provide a sufficient factual basis to suggest that the plaintiffs state a plausible entitlement for relief.

E.

The plaintiffs allege that:

Plan 3B demonstrates a plan which is very irregular and obviously contains districts that have been racially

> gerrymandered.  Specifically, District 4, is drawn in a way that joins voters whose farthest reach is separated by 1 linear miles and runs from the western side of the district all the way to the old Ferry Landing at Albert Street in Lutcher, which covers two-thirds of the eastern part of the Parish, and runs along the river and railroad tracks, joining neighborhoods which are clearly diverse and cannot possibly share a community of interest. Similarly, District 5 spans greater than 10 linear miles, and takes in numerous neighborhoods.  Both districts are examples of blatant cramming, and the council's failure to adhere to the rule of compactness.  The redistricting legislation is so extremely irregular on its face that it rationally can be viewed only as an effort to segregate the races for purposes of voting without regard for traditional redistricting principles.[5]

The defendants point out that sorting out the conclusory allegations and focusing on the factual allegations leaves only a description of the geographic realities of St. James Parish. This, the defendants insist, fails to assert a "denial or abridgement of the right...to vote on account of race or color."  The Court agrees.  The three prerequisites to establishing a voting dilution claim include that (1) the minority group must be sufficiently large and geographically compact to constitute a majority in a district; (2) the minority group must be politically cohesive; and (3) the opposing majority votes as a bloc to defeat the minority's preferred candidate.  <u>Growe v. Emison</u>, 507 U.S. 25, 40

---

[5] The defendants point out an internal inconsistency in the complaint: "[c]uriously, [this] Allegation...asserts that Plan 3B has the opposite effect of the [prior] Allegation.... While [the prior allegation] claims that the plan widely disburses the minority vote, [this allegation] asserts that the plan segregates races."

11

(1993)(citation omitted).  The plaintiffs fail to address these three central elements, and fail to relate their geographical description to voting dilution based on race.  Accordingly, the plaintiffs' allegations again fail to state a claim.

F.

Finally as to the plaintiffs' Voting Rights Act claims, the defendant challenges the sufficiency of the plaintiffs' allegations that:

> The adoption and implementation of such a plan of reapportionment by this public body dilutes the class vote specifically defeating the requirements set forth in the United States Constitution of "one man, one vote, one person, one vote."  Such action disenfranchises the rights of the voters of other districts and discriminates against minorities as well as individuals, specifically violating the provisions of 42 U.S.C., Section 1981.

The defendants contend that this is merely rhetoric that fails to even suggest the underlying facts about this plan or parish that would give rise to an actionable claim.  The Court agrees that such generic allegations fail to pass muster under Twombly and Iqbal.

III.

The defendants finally challenge the sufficiency of the plaintiffs' allegations that the redistricting plan violates the Fifteenth Amendment, Section 1981, and certain state laws.

A.

The defendants contend that the plaintiffs fail to state a claim for a Fifteenth Amendment violation because they mention it without linking any factual allegations to it and because they fail

12

to state a claim for a violation of the Voting Rights Act. The Court agrees. When Congress amended the Voting Rights Act in 1982, it "legislated beyond the reach of the Fifteenth Amendment." <u>Morse v. Republican Party of Virginia</u>, 517 U.S. 186 (1996).

B.

The defendants point out that the plaintiffs mention Section 1981[6] only in passing and that, in any event, they fail to state a claim because any such claim would be derivative of their Voting Rights Act claims. The Court agrees. Because the Court has concluded that the plaintiffs fail to state a Voting Rights Act claim, any attempt to assert a derivative Section 1981 claim also fails.

C.

Finally, the defendants contend that the plaintiffs' attempt to plead state law claims also fail. The plaintiffs appear to invoke La.R.S. 17:71 and 71.3(B) to require election districts to be compact and contiguous. However, as the defendants point out, those cited provisions govern redistricting for school boards. Parish redistricting is governed by La.R.S. 33:1411, which by its terms does not require the "compact and contiguous" districts as

---

[6]To prevail under 42 U.S.C. § 1981, a plaintiff must show: (1) the plaintiff is a member of a racial minority; (2) the defendant's intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities of the statute. <u>Mian v. Donaldson, Lufkin & Jenrette Securities</u>, 7 F.3d 1085, 1087 (2d Cir. 1993), <u>cert</u>. <u>denied</u>, 516 U.S. 824.

claimed by the plaintiffs. Accordingly, the defendants contend that to the extent the plaintiffs seek to plead state law violations, they fail to state a claim. Again, the Court agrees.

In conclusion, the defendants suggest that, after being stripped of the conclusory and formulaic recitations, the amended complaint alleges only the following facts:

- Plan 3B has a 9.2% deviation, which is below the 10% threshold for a prima facie showing of an Equal Protection violation.
- Since the 2000 census, African-American population increased in all districts except District 4.
- District 4 joins voters whose farthest reach is separately one mile, and covers two-thirds of the eastern part of St. James Parish.
- District 5 spans greater than 10 miles, and takes in numerous neighborhoods.
- Plan 3B provides for three majority African American districts out of seven.
- The 2010 population of St. James Parish is 52% African American.

Accepting all of this as true, and even without consideration of plaintiffs' two glaring defaults in responding, the plaintiffs have failed to state a claim for which relief may be granted. Accordingly, the defendants' motion to dismiss the plaintiffs' amended complaint is GRANTED. The plaintiffs' claims are dismissed with prejudice.

New Orleans, Louisiana, September 19, 2011

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE